UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| R. WAYNE PATTERSON, Pro Se,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>THE UNITED STATES SENATE, et al.,<br><br>　　　　　Defendants. | Case No: C 13-2311 SBA<br><br>**ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; AND DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Docket 18 |

R. Wayne Patterson ("Plaintiff"), proceeding pro se, brings the instant action against Defendants[1] seeking, among other things, a declaratory judgment that Rule XXII of the Standing Rules of the United States Senate (the "Cloture Rule")[2] is unconstitutional. See Compl., Dkt. 1. The parties are presently before the Court on Defendants' motion to dismiss for lack of subject matter jurisdiction, and Defendants' motion to dismiss for lack of personal jurisdiction. Dkt. 18. Plaintiff opposes the motions. Dkt. 19. Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby GRANTS Defendants' motion to dismiss for lack of subject matter

---

[1] The named Defendants are: the United States Senate ("Senate"), Joseph Biden ("Biden"), in his capacity as President of the Senate, and Elizabeth MacDonough ("MacDonough"), in her capacity as Parliamentarian of the Senate (collectively, "Defendants").

[2] The Cloture Rule is also known as the Filibuster Rule. The term filibuster - from a Dutch word meaning "pirate" - became popular in the 1850s, when it was applied to efforts to hold the Senate floor in order to prevent a vote on a bill. See http://www.senate.gov/artandhistory/history/common/briefing/Filibuster_Cloture.htm. The term filibuster is defined as "[a] dilatory tactic, esp. prolonged and often irrelevant speechmaking, employed in an attempt to obstruct legislative action." See Black's Law Dictionary (9th ed. 2009). The filibuster is common in the Senate, where the right to debate is unlimited and where a filibuster can be terminated only by a cloture vote. Id.

jurisdiction, and DENIES Defendant's motion to dismiss for lack of personal jurisdiction as MOOT. The Court, in its discretion, finds these matters suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. Cloture Rule

Article I, § 5 of the Constitution provides that "[e]ach House may determine the Rules of its Proceedings. . . ." U.S. Const, Art. I, § 5, cl. 2. In 1917, the Senate adopted the Cloture Rule, which allowed the Senate to end a debate with a two-thirds majority vote. See http://www.senate.gov/artandhistory/history/common/briefing/Filibuster_Cloture.htm. In 1975, the Senate reduced the number of votes required for cloture from two-thirds to three-fifths, or 60 of the 100 Senators. Id. Prior to the adoption of the Cloture Rule, Senators had the right to speak as long as necessary on any issue, there was no rule limiting the amount of time an issue could be debated. Id.

The Cloture Rule provides, in relevant part:

> Notwithstanding the provisions of rule II or rule IV or any other rule of the Senate, at any time a motion signed by sixteen Senators, to bring to a close the debate upon any measure, motion, other matter pending before the Senate, or the unfinished business, is presented to the Senate, the Presiding Officer, or clerk at the direction of the Presiding Officer, shall at once state the motion to the Senate, and one hour after the Senate meets on the following calendar day but one, he shall lay the motion before the Senate and direct that the clerk call the roll, and upon the ascertainment that a quorum is present, the Presiding Officer shall, without debate, submit to the Senate by a yea-and-nay vote the question:
>
> 'Is it the sense of the Senate that the debate shall be brought to a close?' And if that question shall be decided in the affirmative by three-fifths of the Senators duly chosen and sworn -- except on a measure or motion to amend the Senate rules, in which case the necessary affirmative vote shall be two-thirds of the Senators present and voting -- then said measure, motion, or other matter pending before the Senate, or the unfinished business, shall be the unfinished business to the exclusion of all other business until disposed of.

Standing Rules of the Senate Rule XXII, § 2. In short, the Cloture Rule requires a vote of 60 Senators to end debate on a pending matter (i.e., to "invoke cloture"), and a two-thirds vote of the Senators present and voting to end debate on proposed amendments to the

**1**  Senate Rules.  See id.  After cloture has been invoked, a simple majority is all that is
**2**  required to pass any bill in the Senate.

**3**    **B.    Allegations in the Complaint**

**4**    Plaintiff alleges that the Cloture Rule is invalid because it "substantively" violates
**5**  Article I, § 3 and the Seventeenth Amendment of the Constitution, Compl. at 1, 4, which
**6**  provide that "each Senator shall have one vote."[3]  Specifically, Plaintiff, a resident of
**7**  California, alleges that the Cloture Rule has reduced "the value of the Senate vote of each
**8**  Senator from . . . California" to "less than that of [ ]other Senator[s]," which has
**9**  concomitantly made "the value of [his] vote in Congressional elections substantively less
**10** than that of other qualified voters."  Id. at 4, 6.  According to Plaintiff:

> Because of Rule XXII, if 51 Senators wish to vote for any legislation, motion or judicial nomination and 41 Senators refuse to change their votes against closure of debate on that question, that question cannot be passed.  Thus, the votes of the 51 Senators in the affirmative are negated by the negative votes of the 41 Senators; that reduces the value of the vote of each of said 51 Senators to 19.6% less than that of said 41 Senators [( 1 - 41 ÷ 51) x 100].
>
> Similarly, if 59 Senators wish to vote for any legislation, motion or judicial nomination and 41 Senators vote against closure of debate on that question, that question cannot be passed. Thus, the votes of the 59 Senators in the affirmative are negated by the negative votes of the 41 Senators; that reduces the value of the vote of each of said 59 Senators to 30.5% less than that of said 41 Senators [( 1 - 41 ÷ 59) x 100].

**18** Id. at 3.

**19**    In other words, Plaintiff alleges that the Cloture Rule is unconstitutional because it
**20** dilutes the "value" of the votes of each of the Senators from California, which, in turn,
**21** dilutes his voting power as a resident of California.  Plaintiff claims that the Cloture Rule
**22** functions as a de facto supermajority voting rule that violates the one Senator one vote

---

[3] Article I, § 3 provides, in relevant part:  "The Senate of the United States shall be composed of two Senators from each State, *chosen by the Legislature* thereof, for six years; and each Senator shall have one vote."  U.S. Const., Art. 1 § 3, cl. 1 (emphasis added).  The Seventeenth Amendment established direct election of Senators by popular vote.  It supersedes Article I, § 3, Clause 1 of the Constitution, under which Senators were elected by state legislatures.  The Seventeenth Amendment provides, in relevant part:  "The Senate of the United States shall be composed of two Senators from each State, *elected by the people thereof*, for six years; and each Senator shall have one vote."  U.S. Const., XVII Amend. (emphasis added).

language of the Constitution. According to Plaintiff, "a majority that wishes to vote in the affirmative on the merits of a debatable question [should] be permitted to have a vote on the merits of said question." Pl.'s Opp. at 2, Dkt. 19.

By this action, Plaintiff seeks: (1) a declaration that the Cloture Rule violates Article I, § 3 and the Seventeenth Amendment of the Constitution; and (2) an injunction ordering the Senate to revoke the Cloture Rule and to refrain from passing "any other rule that substantively reduces the vote of any Senator compared to that of any other Senator." Compl. at 5.

## II.   DISCUSSION

Defendants move to dismiss the complaint for lack of subject matter jurisdiction on three grounds: (1) Plaintiff lacks Article III standing; (2) Plaintiff's claims are barred by the Speech or Debate Clause to the Constitution; and (3) the complaint presents a non-justiciable political question. Additionally, Defendants move to dismiss the complaint as to MacDonough on two grounds: (1) the Court lacks personal jurisdiction over MacDonough; and (2) venue for Plaintiff's claims against MacDonough is improper in this district.

### A.   Article III Standing

Federal district courts must determine that they have jurisdiction over an action before proceeding to the merits. Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 94-95 (1998). "Article III, § 2 of the Constitution confines federal courts to the decision of 'Cases' or 'Controversies.' " Arizonans For Official English v. Arizona, 520 U.S. 43, 64 (1997). No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006) (quotation marks omitted). Standing to sue is one element of the case-or-controversy requirement; "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute." Allen v. Wright, 468 U.S. 737, 750-751 (1984) (quotation marks omitted).

"In every federal case, the party bringing the suit must establish standing to prosecute the action." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004).

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." Clapper v. Amnesty Intern. USA, 133 S.Ct. 1138, 1146 (2013). The "standing inquiry has been especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." Raines v. Byrd, 521 U.S. 811, 819-820 (1997). Federal courts are not empowered to seek out and strike down any governmental act that they deem to be repugnant to the Constitution; rather, federal courts sit solely to decide on the rights of individuals, and must refrain from passing upon the constitutionality of an act unless obliged to do so in the proper performance of their judicial function, when the question is raised by a party whose interests entitle him to raise it. See Hein v. Freedom from Religion Found., Inc., 551 U.S. 587, 598 (2007) (a plaintiff does not have standing "to challenge laws of general application where their own injury is not distinct from that suffered in general by other taxpayers or citizens"); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 576 (1992) ("Vindicating the *public* interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive.") (emphasis in original).

To satisfy Article III standing, a plaintiff must allege: (1) an injury in fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that the injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-181 (2000); Lujan, 504 U.S. at 560-561. Future injury can be sufficient to satisfy the injury in fact requirement, but only if the plaintiff "is *immediately* in danger of sustaining some *direct* injury as the result of the challenged official conduct and the injury or threat of injury is both real and immediate, not conjectural or hypothetical." Scott v. Pasadena Unified Sch. Dist., 306 F.3d 646, 656 (9th

Cir. 2002) (emphasis in original and quotation marks omitted); see Clapper, 133 S.Ct. at 1147 ("we have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient") (emphasis and alteration in original).  "[F]or a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm. 'The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements.' " Hollingsworth v. Perry, 133 S.Ct. 2652, 2661 (2013); see Raines, 521 U.S. at 819 (The Supreme Court has "consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized to him."); see Lujan, 504 U.S. at 560, n. 1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.").

"For purposes of ruling on a motion to dismiss for want of standing," the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975); see also Tyler v. Cuomo, 236 F.3d 1124, 1131 (9th Cir. 2000).  A "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis omitted).

### 1. Injury in Fact

Plaintiff contends that the Cloture Rule has injured him by diluting the "value" of the votes of his Senators to less than the value of the votes of other Senators in violation of Article I, § 3 and the Seventeenth Amendment of the Constitution.  Pl.'s Opp. at 2, 6-7. Plaintiff argues that if the vote of either of his Senators is "diluted," his representation in the Senate is diminished and he has suffered a direct injury.  Id. at 7.  According to Plaintiff, he is "entitled to expect that the vote of each of the Senators who represent him will not be diluted below the 'one vote' mandated by Article I, § 3 and [the Seventeenth]

- 6 -

Amendment . . . , or else the representation guaranteed has been, is and will be in the future diluted substantively." Id.

The Court finds that Plaintiff has failed to satisfy the injury in fact requirement for Article III standing. Plaintiff has not demonstrated that he has sustained or is immediately in danger of sustaining a direct injury that is concrete and particularized. Here, while Plaintiff argues that he is injured by a "dilution" in representation caused by the Cloture Rule, he seeks to challenge the constitutionality of a neutral Senate rule that may be utilized by any Senator, and the injury he articulates is no different from that of every voting member of the public. Plaintiff has not established that he has a "personal stake" in the constitutionality of the Cloture Rule, or that his alleged injury is particularized to him. His only interest in this suit is to challenge the validity of a generally applicable Senate rule governing debate in the Senate. As such, Plaintiff's claim only raises a generally available grievance about government, which is insufficient to establish Article III standing. See Hollingsworth, 133 S.Ct. at 2662 ("A litigant 'raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.' "); Lance v. Coffman, 549 U.S. 437, 439 (2007) ("Our refusal to serve as a forum for generalized grievances has a lengthy pedigree."); Lujan, 504 U.S. at 575 (a plaintiff does not have Article III standing where the impact on plaintiff is plainly undifferentiated and common to all members of the public); Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 482-483 (1982) (noting that the Supreme Court "repeatedly has rejected claims of standing predicated on the right possessed by every citizen to require that the Government be administered according to law [.]"); Massachusetts v. Mellon, 262 U.S. 447, 488 (1923) ("The party who invokes the [judicial] power must be able to show . . . that he has sustained or is immediately in danger of sustaining some direct injury . . . and not merely that he suffers in some indefinite way in common with people generally.").

Plaintiff has not identified any particular legislation he supports and how he was personally injured because the legislation did not become law as a result of the Cloture Rule. He does not allege that he would have been a direct beneficiary of a specific bill that passed the House, but did not pass the Senate because of a filibuster. Instead, he asserts a generalized injury; namely, that he is directly injured (in the form of a dilution of his voting power) if a minority of 41 Senators refuse to invoke cloture on a "debatable question" when the Senators from California are in the majority of Senators supporting a bill.[4] Plaintiff's alleged injury is abstract and hypothetical, rather than concrete and real. This generalized grievance about government is insufficient to establish an injury in fact to confer Article III standing. Absent a showing of actual or imminent particularized harm, Plaintiff lacks the kind of harm required for Article III standing. See Page v. Shelby, 995 F.Supp. 23, 27-28 (D.D.C. 1998) (rejecting claim that "vote dilution" caused by the Cloture Rule constituted an injury in fact where Plaintiff failed to demonstrate that he sustained or would imminently sustain direct harm as a result of the rule), aff'd, 172 F.3d 920 (D.C. Cir. 1998). Plaintiff cannot establish an injury in fact by simply alleging that the use of the Cloture Rule will block some unspecified legislation supported by the Senators from California that he favors. See id. at 27-28 (dismissing case for lack of standing because the plaintiff did not "show that he would suffer any personal harm should the hypothetical legislation not come to a vote"; noting that a complaint containing unspecified allegations regarding

---

[4] In his opposition, Plaintiff clarifies that he does not contend that he has "a [personal] stake [or an interest] in a particular piece of legislation" that did not pass the Senate because of a filibuster. Pl.'s Opp. at 2, 17. Rather, he "simply contends that the value of his representation in the Senate is impermissibly diminished" by the Cloture Rule. Id. at 17.

1  "legislation [the plaintiff] desires [is] precisely the kind of vague, conjectural and
2  hypothetical harm which cannot confer standing").[5]
3        In support of his "vote dilution" theory of harm, Plaintiff relies on <u>Michel v.
4  Anderson</u>, 14 F.3d 623, 624-25 (D.C. Cir. 1994).  In that case, the plaintiffs (a group of
5  Representatives and voters) challenged a House of Representatives ("House") rule to
6  permit the five delegates to the House from territories and the District of Columbia to vote
7  in the Committee of the Whole.  The court found that congressional vote dilution is a
8  cognizable injury for both the Representatives whose votes are affected and for the voters
9  who rely on their Representatives to represent their interests.  <u>Id.</u> at 625-626.  The court
10 reasoned that the granting of committee votes to the five delegates meant that the
11 committee votes cast by the voters' Representatives would be less valuable because the rule
12 diluted the Representatives' vote from 1 in 440 to 1 in 435.  <u>Id.</u> at 626.  While the Court
13 acknowledged that the voters' asserted injury was "derivative" of their Representatives'
14 diluted committee votes, the court nevertheless found they had standing to complain about
15 the dilution of their representation.  <u>Id.</u>
16       Plaintiff's reliance on <u>Michel</u> is misplaced.  As an initial matter, <u>Michel</u> is not
17 controlling authority.  Furthermore, the "vote dilution" injury alleged by Plaintiff is not the
18 same as the vote dilution in <u>Michel</u>, where each Representative's vote was clearly
19 diminished in power from 1 in 435 to 1 in 440.  <u>See</u> <u>Michel</u>, 14 F.3d at 626.  In this case,
20 the Cloture Rule does not diminish each Senator's voting power by expanding the pool of
21 voting individuals.  A majority vote of Senators is all that is required to pass legislation.
22 The supermajority voting requirement to invoke cloture is simply a procedural rule, not a

---

[5] In <u>Page</u>, the Court explained that it could not find that "a litigant has standing based solely on his speculation that, no matter which party's senatorial candidates he votes for, Senators of the other political party will invoke [the Cloture Rule] to prevent the passage of unspecified legislation favored by [Plaintiff].  [Plaintiff] asserts that [the Cloture Rule] 'drastically diminishes [his] voting power to obtain legislation he desires.'  Yet he does not provide examples of the types of legislation he favors and does not indicate how he personally has been or will be injured if that legislation fails to become law."  <u>Page</u>, 995 F.Supp. at 27-28.

- 9 -

substantive one. The Cloture Rule does not require 60 votes to adopt a law; it requires at least 60 votes to end debate. See Standing Rules of the Senate Rule XXII, § 2.

Moreover, even if the Court were to find that the Cloture Rule functions as a substantive de facto supermajority rule to pass legislation in the Senate, as discussed above, Plaintiff has not shown that he has standing to challenge the Cloture Rule. He has not shown that his alleged harm is personal to him as an individual, as opposed to an injury shared equally with his fellow citizens. In order to have standing, Plaintiff must allege a concrete and particularized injury to his voting rights, rather than a general allegation that his Senators' right to their legislative role has been impeded or may be impeded in the future. See Raines, 521 U.S. at 821, 829-830 (concluding that members of Congress who had voted against the Line Item Veto Act did not have standing to challenge the legislation because they lacked "concrete injury" as their asserted harm was "a type of institutional injury (the diminution of legislative power)," which damaged all congressional members equally, was "wholly abstract and widely dispersed," and not personal to them as individuals).[6]

Following Raines, one district court has found that members of the House lack Article III standing to challenge the constitutionality of the Cloture Rule, see Common Cause v. Biden, 909 F.Supp.2d 9, 24-26 (D.D.C. 2012) (finding that four members of the House who alleged that their votes for the DREAM Act and the DISCLOSE Act were

---

[6] In Raines, four Senators and two Representatives who had voted against the Line Item Veto Act brought suit challenging the Act's constitutionality. The Act gave the President authority to "cancel" certain spending and tax benefit measures after they had been enacted into law. See Raines, 521 U.S. at 814-815. The plaintiffs alleged that the Act injured them "directly and concretely" in their official capacities in three ways: (1) it altered the legal and practical effect of all votes they may cast on bills containing such separately vetoable items; (2) it divested them of their constitutional role in the repeal of legislation; and (3) it altered the constitutional balance of powers between the Legislative and Executive Branches, both with respect to measures containing separately vetoable items and with respect to other matters coming before Congress. Id. at 816. The Supreme Court rejected these arguments, holding that the plaintiffs did not have a sufficient "personal stake" in this dispute, and they failed to allege a sufficiently concrete injury to establish Article III standing. Id. at 830. In so holding, the Court reasoned that the plaintiffs did not allege an injury to themselves as individuals, that "the institutional injury they allege is wholly abstract and widely dispersed . . . , and their attempt to litigate this dispute at this time and in this form is contrary to historical experience." Id. at 829.

nullified by the Cloture Rule did not establish an injury sufficient to confer Article III standing), while another district court has questioned whether Senators would have standing to challenge the Cloture Rule.  See Page, 995 F.Supp. at 28 (noting that "it might well be that [Plaintiff's] Senators would themselves lack standing to challenge the cloture rule in federal court because any injury arguably resulting from that rule is common to all Senators, amounts to a loss of political power, and is essentially an abstract dilution of institutional legislative power," and that "[a]ny injury to [Plaintiff] is even more attenuated than the injury to his Senators and, therefore, certainly insufficient to support standing).

Plaintiff, for his part, has failed to demonstrate that Page is materially distinguishable from the present case or that its reasoning is unsound.  Nor has Plaintiff cited any controlling or persuasive authority holding that his alleged injury is sufficient to satisfy Article III's injury in fact requirement.  Plaintiff's asserted injury is derivative of his Senators' alleged vote dilution injury.  However, Plaintiff has not demonstrated that his Senators would have standing to challenge the constitutionality of the Cloture Rule in federal court in light of the Supreme Court's decision in Raines, let alone that he has standing to do so.

### 2.     Causation

Even assuming *arguendo* that Plaintiff has alleged an injury in fact that is sufficient to confer standing under Article III, he has failed to demonstrate that his injury is "fairly traceable" to the challenged action of the Defendants, and not an injury that results from the independent action of some third party not before the court.  Lujan, 504 U.S. at 560.  Here, Plaintiff has failed to connect his generalized claim of vote dilution injury to any particular use of the Cloture Rule or to any specific action taken by the Senate, Biden, or MacDonough.  By failing to do so, Plaintiff has not shown that his alleged vote dilution injury is "fairly traceable" to the Cloture Rule or to the conduct of any of the Defendants.  As such, Plaintiff's claimed injury is too speculative and remote to satisfy Article III's causation requirement.  Indeed, Plaintiff has not shown that, but for the Cloture Rule, legislation that would have directly benefited him in a personal way would have become

1 law, i.e., the legislation would have been passed by both the Senate and House and signed
2 by the President.  See Page, 995 F.Supp. at 29 ("The chain of causation between [the
3 Cloture Rule] and any possible injury suffered by [Plaintiff] stemming from the failure of
4 unspecified legislation to be enacted is far too remote to satisfy [the] . . . element of
5 standing. . . . There are too many independent actors and events in the span between a
6 cloture vote and the failure to pass legislation to characterize the connection as direct.").

### 3. Redressability

Finally, Plaintiff has failed to satisfy the redressability requirement of Article III standing.  Plaintiff has not shown that it is likely that his alleged injury will be redressed by a favorable decision by this Court.  Lujan, 504 U.S. at 560.  Here, Plaintiff requests the Court declare the Cloture Rule unconstitutional and enjoin the Defendants from passing any rule that "substantively reduces the vote of any Senator compared to that of any other Senator."  Compl. at 5.  Even if the Court ordered the relief that Plaintiff seeks, such relief would not redress his alleged injury.  If the Court were to declare the Cloture Rule unconstitutional, the Senate could return to its former practice of allowing unlimited debate unless unanimous consent exists to end debate.  See Judicial Watch, Inc. v. U.S. Senate, 432 F.3d 359, 360-361 (D.C. Cir. 2005) (noting that Senate practice from 1806 until the initiation of formal cloture rules in 1917 was evidently one of unlimited debate); see also Page, 995 F.Supp. at 29 (were the Cloture Rule declared unconstitutional, the Senate could return to its former practice of allowing unlimited debate unless there existed unanimous consent to close debate).

Moreover, assuming the Court were to construe the complaint as requesting an order directing the Senate to enact a majority rule for cloture, Plaintiff has not cited any authority demonstrating that this Court has the authority to order the Senate to rewrite its rules.  See Judicial Watch, 432 F.3d at 361 (noting that "a request for judicial substitution of a simple majority rule for cloture . . . would obviously raise the most acute problems, given the Senate's independence in determining the rules of its proceedings and the novelty of judicial interference with such rules"); Page, 995 F.Supp. at 29 ("rewriting the Senate rules

. . . raise[s] serious separation of powers concerns") (citing U.S. Const, Art. I, § 5, cl. 2 ("Each House may determine the Rules of its Proceedings. . ."); see also United States v. Smith, 286 U.S. 6, 48 (1932) ("The Constitution commits to the Senate the power to make its own rules; and it is not the function of the Court to say that another rule would be better."). Indeed, the Ninth Circuit has held that "in light of the Speech and Debate Clause of the Constitution, Art. I, § 6, cl. 1,[7] the federal courts lack jurisdiction to issue orders directing Congress to enact or amend legislation." Newdow v. U.S. Congress, 328 F.3d 466, 484 (9th Cir. 2003) (footnote added), rev'd on other grounds by Newdow, 542 U.S. 1. Plaintiff has not proffered any authority holding that a federal district court has the power to direct the Senate to amend one of its internal procedural rules.[8]

### B. Motion to Dismiss for Lack of Personal Jurisdiction

Because the Court has found that Plaintiff lacks standing to prosecute this action, Defendants' motion to dismiss for lack of personal jurisdiction is DENIED as MOOT.

## III. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss for lack of subject matter jurisdiction is GRANTED without leave to amend.

2. Defendants' motion to dismiss for lack of personal jurisdiction is DENIED as MOOT.

3. The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: March 31, 2014

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[7] See U.S. Const. Art. I, § 6, cl. 1 ("[F]or any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other place.").

[8] In light of the Court's determination that Plaintiff lacks standing to prosecute this action, the Court will not reach the alternative grounds raised by Defendants for dismissing this case for lack of subject matter jurisdiction. In dismissing this case for lack of standing, the Court expresses no opinion as to whether the Cloture Rule violates the Constitutional requirement that "each Senator shall have one vote."